Frederick A. COTHERINE,
Plaintiff/Appellant,

v.

BOARD OF EDUCATION OF the CITY
OF ST. LOUIS, et al., Defen-
dants/Respondents.

No. 59519.

Missouri Court of Appeals,
Eastern District,
Division Four.

Oct. 29, 1991.

Charles R. Oldham, St. Louis, for plaintiff/appellant.

Lashly & Baer, P.C., Kenneth C. Brostron and Sandra A. Padgett, St. Louis, for defendants/respondents.

KAROHL, Judge.

This is an appeal by Frederick Cotherine, a former tenured teacher and employee of the Board of Education of the City of St. Louis. On March 16, 1989, the superintendent charged Cotherine with one count of inefficiency and violating Board Regulation 5347 by prejudicing the good order and discipline of Shepard School and two counts of inefficiency and violating Board Regulation 5210 by acts of insubordination. In October 1989, the Board conducted a hearing on these charges. On January 25, 1990, the Board concluded Cotherine's actions violated Board Regulations 5347 and 5210 and dismissed him. Cotherine petitioned the trial court for review pursuant to § 536.100 RSMo 1986. The court upheld the decision of the Board. This appeal followed.

Cotherine presents four points on appeal. First, he alleges the Board erred when it found his actions violated Board Regulation 5347, because the regulation is designed to prohibit only uncharged serious criminal offenses. Second, he alleges the Board erred when it found his acts of insubordination were sufficient to justify dismissal. Third, he alleges the Board erred when it did not grant his motion to strike the charges "because the administration had not followed the procedures established by the Board for the imposition of discipline of a tenured teacher." Fourth, he alleges the Board erred "when it did not reinstate [him] on probation because he was charged with inefficiency in the line of duty and his actions were not so serious as to justify dismissal." We affirm.

■■■ We review the decision of the Board, an administrative agency, not the decision of the trial court. *Benton–Hecht Moving & Storage v. Call*, 782 S.W.2d 668, 669 (Mo.App.1989). We must uphold the Board's decision "if it is authorized by law and supported by competent and substantial evidence upon the whole record, unless the result is clearly contrary to the reasonable expectations of the general assembly." *Al–Tom Inv., Inc. v. Director of Revenue*, 774 S.W.2d 131, 132 (Mo. banc 1989). Where the decision is based upon an interpretation or application of the law, we will exercise our independent judgment. *Id.* However, we will not substitute our judgment on the evidence, even if the evidence could support two opposed findings. *Toole v. Jones*, 778 S.W.2d 376, 378 (Mo.App. 1989). We view the evidence, together with all inferences therefrom in the light most favorable to the Board's decision. *Id.* The determination of credibility of the witnesses is for the Board. *Id.*

The evidence showed the Board employed Cotherine in September 1975. He became tenured three years later. Cotherine began teaching at Shepard School in March 1983. In January 1989, while he was reassigned to the Elementary Office pending investigation of two December 1988 incidents, Cotherine received an "unsatisfactory" evaluation with the comment that his "disregard for the learning environment at Shepard School and his inability to control his behavior threatens the safety and well being of students and staff making his performance at Shepard unsatisfactory." In a memorandum attached to the evaluation and addressed to the associate superintendent, Dr. Young the Shepard principal, listed incidents where Cotherine had confrontations with students, parents and faculty commencing in October 1986.

Thereafter, on March 16, 1989, the superintendent suspended Cotherine without pay and recommended to the Board that Cotherine be dismissed. The superintendent charged Cotherine with three separate charges.

*Charge No. 1:* You were inefficient in the line of duty and you violated Board of Education Regulation 5347 ... prohibiting misconduct in that during the 1986–87, 1987–88 and 1988–89 school years while assigned to the Shepard Elementary School, you established a pattern and practice of engaging in disorderly conduct to the prejudice of good order and discipline in the school system. Examples of which are:

a. During October, 1986, Dr. Savannah Miller Young, Principal observed you chasing Dennis Tuberville, a student, around the school building and shouting, "Let me catch you, I'll beat your ass—you don't know who you're dealing with!"

b. During December, 1986, while supervising students in the school cafeteria, Dr. Young observed you physically grab Michael Jones, lift him up shouting "Don't holler in my ear" then throw him to the floor.

c. On or about December 4, 1987, in the school cafeteria and in the presence of Dr. Young, you told Jacob Perfater in a loud and boisterous manner, "I don't give a damn who you bring here, don't talk about my mama and don't call my name!"

d. On or about December 5, 1988, in the presence of other students, you verbally abused Jason Corzine. Students reported to Dr. Young that you screamed at the student "Every time I see you and your little brother you make me sick to my stomach—and Dr. Young can bring her wiggly self down here and I'll tell her in her face that I don't like you or your brother!"

*Charge No. 2:* You were inefficient in the line of duty and you violated Board of Education Regulations 5210 and 5346 ... prohibiting insubordination in that while on the premises of the Shepard School, you engaged in a verbal and physical confrontation with the parents of student Donna Farris i.e. Mr. and Mrs. Samuel Farris. Dr. Young physically separated you and Mr. Farris by placing her person between you. She further directed you to stop and to leave the area. You refused to obey her directives and continued to shout profanities and to attempt to strike Mr. Farris, even after Dr. Young had persuaded him to leave the school yard.

*Charge No. 3:* You were inefficient in the line of duty and you violated Board of Education Regulations 5210 and 5346 ... prohibiting insubordination in that on or about May 3, 1988, while in the school cafeteria you complained to Dr. Young in a loud tone of voice, about your supervisory duty schedule. When Dr. Young attempted to explain the rationale for the schedule, you shouted "I'm damn tired of the duty", demanded to see your supervisor and left uttering profanity in a loud voice.

The relevant Board Regulations are set forth below.

ALL EMPLOYEES—INSUBORDINATION NO. 5210

All employees shall obey all lawful orders and directives issued by their superiors and shall treat their superiors with respect and courtesy in the line of duty. Failure to so act shall constitute insubordination in the line of duty.

ALL EMPLOYEES—GROUNDS FOR DISCIPLINARY ACTION NO. 5346

Violation of or failure to obey any Federal law or statute, any Missouri law or statute, or any local law or ordinance, the expressed policies of the Board, the published rules or regulations of the Board, or the standing orders of the school system, or lawful directive issued by the Superintendent or his/her designee shall be grounds for disciplinary action against an employee, including dismissal.

ALL EMPLOYEES—MISCONDUCT NO. 5347

Although not specifically mentioned in these regulations, all disorders and neglects to the prejudice of good order and discipline in the school system and all conduct of such a nature as to bring discredit upon the school system shall be considered conduct which subjects an em-

ployee to disciplinary action, including dismissal.

Conduct which brings discredit upon the school system includes, but is not limited to, the following:

1. Conviction of a felony or misdemeanor or a guilty plea to a felony or misdemeanor charge followed by the suspension of the imposition of sentence;

2. Sexual intercourse, deviate sexual intercourse, or sexual contact with any student, either on or off school premises, either with or without that student's consent....;

3. Misappropriation or misapplication of school funds or school property to unauthorized or dishonest use;

4. Misappropriation or misapplication of the name of the Board of Education, the school district, school officials or a school within the system to unauthorized or dishonest use.

In October 1989, the Board held a hearing on the pending charges. Cotherine presented a "Motion to Strike Certain Charges" to the Board. Cotherine moved to strike Charges 1(a), (b), (c), 2, and 3 on two grounds: (1) he received a satisfactory evaluation for the 1986–87 and 1987–88 academic years and he was not counseled, advised or written up at the time the incidents in these charges occurred; and (2) the Board violated its own policy statement for dismissal by acting on information improperly placed in Cotherine's personnel file. The Board did not immediately rule on the motion and Cotherine submitted it with the case. During the hearing, Cotherine offered evaluations dated May 1986, May 1987 and May 1988 into evidence. These evaluations covered the school year ending with the month of evaluation. Until January 1989, Cotherine obtained an overall rating of "Satisfactory" on his evaluations at Shepard. However, on the 1987 and 1988 evaluation, Cotherine received a "Needs Improvement" in the area of interpersonal relationships.

On January 25, 1990, the Board issued its decision. The Board found the incidents alleged in Charges 1(a), (b), (c), 2 and 3 occurred. The Board did not make a finding regarding Charge 1(d) nor did it rule on Cotherine's motion to strike all charges. The Board concluded as a matter of law that Cotherine's actions in Charges 1(a), (b) and (c) violated Board Regulation 5347 and his actions in Charges 2 and 3 violated Board Regulation 5210. Based upon its findings of fact and conclusions of law, the Board dismissed Cotherine as an employee of the Board of Education in the City of St. Louis.

■ In his first point, Cotherine alleges the Board erred as a matter of law when it ruled he violated Board Regulation 5347 because his acts (use of the words "ass" and "damn," and shouting at students) were not the type of conduct contemplated by the Board in enacting the regulation. Cotherine argues the regulation is designed to prohibit only uncharged serious offenses of a criminal nature. Cotherine further argues the regulation is ambiguous and hence, must be strictly construed against the Board because it is capable of several interpretations.

The Board Regulation 5347 states:

Although not specifically mentioned in this regulation, *all* disorders and neglect to the prejudice and good order of the school system and all conduct of such a nature as to bring discredit upon the school system shall be considered conduct which subjects an employee to disciplinary action.... (Our emphasis).

The regulation then goes on to describe conduct which brings *discredit* upon the school and lists several criminal offenses. The regulation itself states the list of conduct which brings discredit upon the school is not intended to be all inclusive. Moreover, Cotherine was charged with violating the regulation by engaging in disorderly conduct, not by engaging in conduct which brings discredit upon the school. The Board could have, and did, properly conclude that using profanity, shouting, as well as chasing and physically handling students was disorderly conduct prejudicing the good order and discipline of the school. Point denied.

In his second point, Cotherine alleges the Board erred as a matter of law "when it found that the acts complained of in Charges 2 and 3 were sufficient to justify" his dismissal. Cotherine argues the Board found he violated Board Regulation 5210, but made no finding he violated Board Regulation 5346. Therefore, he concludes the Board acted in an unreasonable, arbitrary and capricious manner when it dismissed him. This argument is without merit.

Board Regulation 5346 states that a violation of the published regulation of the Board shall be grounds for disciplinary action, including dismissal. The Board already found that Cotherine violated Board Regulation 5210 and was merely applying Board Regulation 5346 when it dismissed him. No finding that Cotherine violated Board Regulation 5346 was required. We observe § 168.221.3 RSMo 1986 provides a majority of the members of the Board may remove a teacher for violating the published regulations of the school district. Furthermore, in *Toole*, 778 S.W.2d at 382, we held the Board may remove a teacher for a one time violation of Board regulations. Point denied.

In his third point, Cotherine alleges: "The Board erred when it failed to grant [his] motion to strike Charges 1(a), 1(b), 1(c) and Charges 2 and 3 on the grounds that the administration had not followed the procedures established by the Board for the imposition of discipline of a tenured teacher." He argues none of the material relating to these charges was placed in his personnel file which was a clear violation of Board policy found in *Policy Statement of the St. Louis Board of Education in Relation to Working Conditions for Teachers and Certain Other Employees.* Article XVII, section C of the statement provides in pertinent part:

PERSONNEL FILES

Material relating to a teacher's conduct, service, character or personality shall not be placed in the teacher's personnel file *unless* the teacher is given the opportunity to acknowledge that he/she has read such material by affixing his/her signature on the actual copy filed, with the understanding that such signature merely signifies that he/she read the material . . .

The teacher shall have the right to answer any material filed and his/her answer shall be attached to the file copy. Action by the Board in relation to the retention, promotion, or recommendation for dismissal of an employee will, *in the main,* be based only on material and information contained in that employee's personnel file. The Board condemns any possible practice of maintaining so-called "secret" files on employees. *However, this will not preclude the consideration and use of other relevant information about the employee.* And in the event the Board's action in that regard should be challenged or protested by the employee, the materiality, relevancy and propriety of the use of such information which was not contained in the employee's personnel file will be subject to review through the grievance procedure. (Our emphasis).

Cotherine argues he was deprived of his right to be informed of conduct which his supervisors deemed inappropriate and he was not able to place a response to the incidents in his file for the superintendent to review. Furthermore, Cotherine contends his ability to defend the charges was prejudiced by the time which passed between the incidents and charges. For example, witnesses were no longer available.

The following is a list of actions taken by Cotherine's supervisors after each incident. First, Charges 1(a) and (b): Dr. Young, Shepard Principal, issued oral reprimands subsequent to each incident.

Second, Charges 1(c) and (d): On December 6, 1988, Dr. Young and John Ingram, Deputy to the Assistant Superintendent for Elementary School Education, met with Cotherine. Dr. Young presented a report of the December 5, 1988, incident. Cotherine orally "agreed with most of the report." Ingram asked Cotherine to present a written response to the December 5, incident to Dr. Young. Dr. Young then de-

scribed the December 6, incident. Cotherine responded orally. On December 7, Cotherine met in conference with Dr. Young and Jason's parents regarding the December 5, incident. Cotherine apologized for his action. On December 9, 1988, Anne Price, Assistant Superintendent for Elementary School Education, met with Cotherine. Price mailed Cotherine a letter summarizing the conference. She included her evaluation of the December 5, and 6, incidents and listed recommendations for his improvement. She also informed Cotherine he was on "informal probation."

Third, Charge 2: Cotherine wrote a report of the incident. The report served as a basis for the charge. Cotherine apologized to the parents and took a twelve and a half day sick leave. Dr. Young spoke with Cotherine, composed a Job Target for him and held weekly conferences to discuss his progress. Dr. Young also mailed an incidence report to Sam Miller, Director Special Services/Security.

Fourth, Charge 3: Mr. Marks, the Deputy Superintendent for Administration, met with Cotherine. Dr. Young wrote an incidence report and placed it in Cotherine's file. However, Cotherine did not sign the report because he was on sick leave.

At the hearing before the Board, the superintendent did not offer written evidence relating to the two 1986 incidents, Charges 1(a) and (b). The superintendent did offer as exhibits, written evidence on the remaining charges. Most of the exhibits were offered over Cotherine's objection the exhibits were not contained in his file or, if placed in the file, had not been seen by him.

With respect to Charges 1(a), (b) and 3, Cotherine is correct. His supervisors did not comply with the Board's policy statement that actions to terminate, will in the main, be based upon information contained in the personnel file and available for the employee's inspection. However, we need not decide whether the failure to fully or properly maintain Cotherine's personnel file precluded the Board from considering the charges. Cotherine had timely opportunity to respond to the incidents later alleged in Charges 1(c), (d) and 2 as set forth above. His position is not reinforced by surprise or prejudice. Cotherine was aware at the time of the incidents in Charges 1(c), (d) and 2 that his supervisors considered his performance inadequate. After the Charge 2 incident, Cotherine was granted "sick leave," presented with a Job Target, and monitored weekly. After the Charge 1(c) and (d) incidents, Cotherine attended several meetings with his supervisors, had the opportunity to respond, was reassigned to the Elementary Office and placed on "informal probation." Furthermore, Cotherine received an unsatisfactory evaluation in January 1989, following the incidents in Charges 1(c) and (d). Cotherine was not entitled to have Charges 1(c) and 2 dismissed.

The Board, in its decision, concluded the conduct of Cotherine in each Charge, 1(a), (b), (c), 2 and 3, separately or collectively was sufficiently serious to warrant his dismissal. Thus, the Board's failure to rule on Cotherine's motion to strike does not invalidate the decision of the Board to dismiss Cotherine which also rests on Charges 1(c) and 2.

In his final point, Cotherine alleges the Board erred when it did not reinstate him because the offenses were not "so serious as to require immediate dismissal." The short answer to this is the Board has the discretion and authority to dismiss an employee for a proven, one time violation of a Board Regulation. Section 168.221.3 RSMo 1986. *Toole*, 778 S.W.2d at 382. Point denied.

We affirm.

SMITH, P.J., and AHRENS, J., concur.